## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| Fiona Chen,<br><br>        Plaintiff,<br><br>    v.<br><br>Janet Yellen,[1] Secretary of the<br>Department of the Treasury,<br><br>        Defendant. | Case No. 3:14-cv-50164<br><br>Honorable Iain D. Johnston |

### MEMORANDUM OPINION AND ORDER

Fiona Chen, a former employee of the Internal Revenue Service ("IRS"), alleges claims of a hostile work environment and discrimination in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act. The Secretary of the Department of Treasury ("Secretary") moved to bar the testimony of Ms. Chen's expert witness, Professor Kyle Brink, Ph.D. Dkt. 161. After a thorough review, this Court grants the Secretary's motion to bar Ms. Chen from presenting and relying upon Professor Brink's testimony under Federal Rule of Evidence 702 because it is largely based on allegations and not "sufficient facts or data" as required by 702(b).

### I.      Background

Ms. Chen asserts two claims: (I) hostile work environment based on circumstances that led to Ms. Chen's resignation from the IRS, and (II) retaliation

---

[1] The Court substitutes Janet Yellen as the proper defendant. *See* Fed. R. Civ. P. 25(d).

based on Ms. Chen's complaint of discrimination lodged with the Equal Employment Opportunity Commission ("EEOC") in the months before her resignation. Third Amended Complaint, Dkt. 129. Ms. Chen retained Professor Kyle Brink as an expert in this case and produced his report to the Secretary. Expert Report, Dkt. 162-1. The Secretary filed a motion to bar this expert under Fed. R. Evid. 702 and 403, Dkt. 161, and Ms. Chen opposed, Dkt. 171.

Professor Brink is an Associate Professor at Western Michigan University, teaching courses in business management and human resources in the Haworth College of Business. He holds a Ph.D. in industrial/organizational psychology, has numerous peer-reviewed publications on organizational psychology and workplace management, served as a consultant for numerous companies, and has served as an expert witness in a dozen cases. Dkt. 162-1, Appendix A, at 27-36. His report, titled "Evaluation of Evidence of Discrimination, Harassment, and Retaliation," states that "[t]he vast majority of evidence I reviewed is from the complaint that was filed on July 28, 2014." *Id.* at ¶ 3 n.1. He further states that he was "asked to review the evidence to evaluate and interpret it in the context of human resource management best practices; diversity theory; and equal employment opportunity law, practices, and violations." *Id.* at ¶ 3. Professor Brink's findings and conclusions assert that Ms. Chen was "subjected to a barrage of pervasive behaviors . . . directed solely at Chen, who was the only Taiwanese Asian American in the group" and that those behaviors were "forms of discrimination and harassment based on race and national origin." *Id.* at ¶¶ 6-8.

The report discusses Ms. Chen's qualifications and job performance, including her credentials and communication skills, summarizes relevant statutory law and EEOC guidance, and sets out "evidence" of discrimination against and harassment of Ms. Chen, including the failure to provide her with support and development, added obstacles and barriers, language-based discrimination, microagressions, and retaliation. *Id.* at 2. This alleged "evidence," based only on the plaintiff's complaint, ignores the extensive discovery and deposition testimony that has been developed over the past seven years. And, in fact, the report's opinions are often mere recitations of the allegations in the complaint. *See, e.g.,* Dkt. 162-1, ¶¶ 92-95; *cf. Wendler & Ezra, P.C. v. Am. Int'l Group, Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) ("an expert's *ipse dixit* is inadmissible"). For the reasons herein, the Court cannot allow Professor Brink's expert testimony to proceed to the trier of fact.

## II.    Analysis

A *pro se* party's filings are construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). But "rules apply to uncounseled litigants and must be enforced." *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) (citing *McNeil v. United States*, 508 U.S. 106, 112-113 (1993)). The proponent of an expert bears the burden of demonstrating that the expert's testimony satisfies the applicable legal standards. Fed. R. Evid. 702 Advisory Committee's Note (2000 Amend.) ("the proponent has the burden of establishing that the pertinent admissibility requirements are met by a

preponderance of the evidence"); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579 (1993). "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the testimony is *based on sufficient facts or data*." Fed. R. Evid. 702 (emphasis added). An expert's testimony is admissible if he is qualified, if his methodology is reliable, and if his testimony is relevant. *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021). *Daubert*, working in tandem with Rule 702, requires a District Court to ensure that a proposed expert's testimony is both reliable and relevant. *Kirk*, 991 F.3d at 872 (quoting *Daubert*, 509 U.S. at 589). As to the reliability prong, "the correct inquiry focuses not on the ultimate correctness of the expert's conclusions, but rather on the soundness and care with which the expert arrived at her opinion." *Id.* (cleaned up).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a); *United States v. Johnson*, 916 F.3d 579, 588 (7th Cir. 2019) (affirming the district court's admission of government expert testimony as to the drug trade industry). And, under Rule 702, an expert's opinion is relevant "so long as it assists the jury in determining any fact at issue in the case." *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014) (holding that an expert's testimony was proper even though the expert reached an opposite conclusion). As part of its gatekeeping

function, a district court must ask itself if the proffered expert testimony is relevant, that is, if it will aid the jury in its deliberations. *See Daubert*, 509 U.S. at 589.

Here, the Secretary challenges the expert's reliability and relevance, but not his qualifications. Dkt. 162. In addition, the Secretary argues that expert testimony is not necessary in this area of law because it is not needed to assist the trier of fact, i.e., the jury, in understanding the evidence. *Id.* In response, Ms. Chen asserts that he is qualified, that his report is reliable, and that expert testimony is necessary. Dkt. 171.[2]

A. *Qualifications*

The Secretary does not challenge Professor Brink's qualifications. Because his qualifications are not at issue, the Court does not address this prong. *See United States v. Jett*, 908 F.3d, 252, 266 (7th Cir. 2018) (holding that District Judges need not perform each step of the Rule 702 analysis when it is not specifically requested by a party).

B. *Reliability*

The Secretary argues that Professor Blink's opinions are unreliable because he relied on insufficient facts and employed unreliable methods. Dkt. 162, at 6-9.

---

[2] At the outset, the Court notes that it addresses the admissibility of Professor Brink's opinions, not his report. The report itself is inadmissible hearsay. *See Bianco v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 328 (N.D. Ill. 2008) (expert reports are pristine hearsay).

Under Federal Rule of Evidence 702(b)-(d), to be reliable, testimony by an expert witness must be "based on sufficient facts or data;" "the product of reliable principles and methods;" and "based upon a reasonable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Smith v. Ill. Dep't of Transp.*, No. 15 C 2061, 2018 U.S. Dist. LEXIS 133810, at *37-38 (N.D. Ill. Aug. 8, 2018), *aff'd*, 936 F.3d 554 (7th Cir. 2019) ("Even if the witness qualifies as an expert, the district court still must ensure that the evidence 'is sufficiently reliable to qualify for admission.'") (internal citations omitted). Because juries tend to give expert testimony a "talismanic significance," district courts must carefully perform the *Daubert* analysis before admitting such evidence. *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004).

Both of the Secretary's arguments come down to Professor Brink's admission that the "vast majority of evidence" on which he based his report was Ms. Chen's original complaint filed on July 28, 2014. The Secretary correctly notes that the 2014 complaint is not the operative complaint. In 2015, Judge Kapala granted Defendants' motion to dismiss this 2014 complaint. Dkt. 35. Over three years later, Ms. Chen filed the most recent Third Amended Complaint on January 5, 2018. *See* Dkt. 129. As this was filed nearly eighteen months before the date of Professor Brink's report, he cannot rely on an earlier, dismissed complaint. To the extent that Professor Brink relied upon allegations from the 2014 complaint that Ms. Chen substantively changed or omitted when she filed her Third Amended Complaint in 2018, he relied upon allegations that are no longer relevant to the case. *See Massey*

*v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) ("when a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward"); *In re County of LaSalle*, 169 F.3d 469, 472 ("any allegations and parties not brought forward [in an amended complaint] fell by the wayside"). Even if the Court assumes that Professor Brink only relied upon allegations in the 2014 complaint that survived through to the 2018 complaint, it is well-established that these allegations are not evidence sufficient to create a triable issue of fact. *See, e.g., Tibbs v. City of Chicago*, 469 F.3d 661, 663 n.2 (7th Cir. 2006).

Similarly, these allegations can neither form a reliable factual basis for expert testimony to be considered at summary judgment or trial. The district court's role as "gate-keeper" under *Daubert* requires it to exclude expert testimony when it is "based upon speculation, unsupported assumptions, or conclusory allegations." *Buscaglia v. United States*, 25 F.3d 530, 533 (7th Cir. 1994); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 326 (N.D. Ill. 2008) (finding expert testimony to be objectionable when the underlying facts of have no "affirmative proof"). "Allegations in a complaint are not evidence." *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 810 (7th Cir. 2003). Indeed, federal courts across the country have found that expert opinions that rely primarily upon allegations in a complaint are not "based on sufficient facts and data," as required by Rule 702, and are otherwise unreliable. *See, e.g., Wasilewski v. Abel Womack, Inc.*, No. 3:10cv1857 (VAB), 2017 U.S. Dist. LEXIS 4953 (D. Conn. Jan. 14, 2016) (questioning the reliability of an expert's methodology to the extent that he relied exclusively on allegations from complaints

to establish the facts); *Mosby v. Railey*, No. 5:3cv167-OC-10 GRJ, 2005 U.S. Dist. LEXIS 57437, \*3 (M.D. Fla. Jul. 29, 2005) (expert testimony based solely on the allegations in the operative complaint, plaintiff's personnel file, and racial demographics of the police department was not "based upon sufficient facts and data"); *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, No. 98cv8272 (RPP), 2003 U.S. Dist. LEXIS 17623, \*10 (S.D.N.Y. Oct. 2, 2003) (proposed expert testimony based solely on allegations in the complaint and a "limited number" of depositions was not based upon "sufficient facts or data").

The Secretary contends that Professor Brink's testimony "is nothing more than unsupported speculation, failing to take into account the prior under-oath statements made by Chen's co-workers and supervisors during the administrative investigative phase, documents produced in discovery, and no less than seven depositions taken by Chen of supervisors and union officials." Dkt. 162, at 6. This Court agrees.

The report includes abundant citations to the original complaint (Dkt. 1) and four pages of the attachments, which include pages of unsourced narrative, Ms. Chen's complaint to the Department of the Treasury, the decision of the EEOC, and what appears to be Ms. Chen's formal Departure Rating from the IRS (Dkt. 1-1, at 18-21). The report also includes citations to ten pages of bates-numbered documents (numbers 4947, 1542-1551). Forms of the word "deposition" appear five times in the document: all within Professor Brink's CV detailing his experience as an expert witness. Dkt. 162-1, at 31. Forms of the word "testify" appear five times, four of

which, again, are in Professor Brink's CV detailing his experience as an expert witness. *Id.* The fifth appears in reference to Chen's supervisor, Kilmnick, who "testified that he knows Solano did nothing to evaluate Chen." *Id.* at ¶ 48. However, to support this opinion, Professor Brink cites to Ms. Chen's 2014 complaint as the factual basis, not Kilmnick's testimony. *Id.* (citing Dkt. 1, ¶ 148 ("Kilmnick . . . testified that he knew Solano did nothing to evaluate Chen")). This is just one example of how Professor Brink's opinions relied on Ms. Chen's one-sided set of allegations instead of the facts and data of the case. A thorough review of the report includes numerous opinions based on Ms. Chen's dismissed allegations masquerading as "evidence." *See* Dkt. 162-1, ¶¶ 30, 36, 37, 39, 41, 79, and 92. Allegations are not the proper foundation for expert testimony.

In *Smith*, the Seventh Circuit held that a district court properly excluded expert testimony that "relied only on what appears to be plaintiff-curated records." *Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 558 (7th Cir. 2019). The court explained that the expert's reliance "on an anemic and one-sided set of facts casts significant doubt on the soundness of her opinion." *Id.* at 558-59. As the expert in *Smith*, Professor Brink admittedly relied on a one-sided set of facts, curated by Ms. Chen. When expert opinions are based on unreliable and incomplete facts, they are fundamentally flawed. *Id.* The "facts" presented by Ms. Chen in her complaint are not "facts" in evidentiary sense contemplated by Rule 702. Ms. Chen contends that her allegations will comprise the majority of her testimony at trial, and while trial testimony is sufficient for Rule 702, the issue is that the expert relied only on *her*

set of facts—without the Secretary's. Dkt. 171, at 5. It is this Court's task to ensure that expert testimony is reliably based on facts and data before allowing it to proceed to the trier of fact, and as to Professor Brink's opinions, the Court cannot be certain of that.

For example, Professor Brink's opinions in the section of the report titled "Language-Based Discrimination and Harassment," assert that Kilmnick, Ms. Chen's new manager, "laughed at how [she] pronounced a word and compared her to another employee who speaks English with an accent," and that "[a] few days later, Kilmnick yelled at [her] for how she speaks, indicating that he did not like her voice, tone of voice, and speed of speech." Dkt. 162-1, ¶¶ 70-71. But discovery revealed that Kilmnick's version of events was quite different. Kilmnick claimed that Ms. Chen continually raised her voice during a phone call.[3] Kilmnick stated that when he asked why she raised her voice, she responded that she was a woman and that was why her voice seemed high. Dkt. 189-2, p. 5. Kilmnick then claims she asked why she was the only woman in the group and whether Kilmnick had an issue dealing with women. *Id.* at pp. 5-6, 8. Then, Ms. Chen accused Kilmnick of being prejudiced against people with accents. *Id.* at p. 6. Kilmnick responded by saying that there was another employee in the group who spoke with an accent and that he had no problem with accents. *Id.* This example is precisely why an expert's

---

[3] For context, just after Ms. Chen joined Kilmnick's group, they exchanged emails regarding Ms. Chen's alleged duty to drive to the Chicago office on June 13, 2007, to sign timesheets for her prior group (under Solano's management). Kilmnick said that it sounded like a waste of time and instead instructed her to work from the Morton Grove office on June 13 and 14, 2007, where he needed her to be. The telephone call was a follow-up to an email exchange on the topic. *See* Dkt. 189-2, at pp. 5-6, 8-9.

10

reliance on one-sided allegations cannot form a reliable expert opinion under Rule 702. One-sided facts do not comprise "sufficient facts and data." Where Ms. Chen alleges that Kilmnick yelled at her for how she speaks, as a form of language-based harassment, Kilmnick's account tells a story of a manager dealing with an uncooperative and defensive employee.

Ms. Chen defends Professor Brink's testimony by arguing that "[i]t is unreasonable . . . to request an expert on a case to review all 3,564 pages first hand instead of reviewing the summary paragraphs derived from the pages." Dkt. 171, at 6.[4] And here, they were even contained conveniently on one CD-Rom. *Id.* at 5. Based on the undersigned's experience with evidentiary matters, it is not uncommon to require experts to in federal court to review thousands—if not tens or hundreds of thousands—of pages of evidence from the record in shaping their opinions. It is unreasonable, however, to provide an expert with an outdated complaint instead of the evidence and data compiled through years of discovery. Although Ms. Chen included copies of official documents—e.g., the EEOC decision, her Treasury complaint, and her IRS Departure Rating—those documents are presented in the context of a narrative explaining Ms. Chen's interpretation of the facts and thereby form an unreliable basis for an expert opinion. Had Professor Brink cited to or explained that he was relying upon documentation from official investigations or deposition testimony, this analysis would be different. That didn't happen here.

---

[4] To be sure, this Court's decision does not address the latter, as it does not appear that Professor Brink was provided or relied upon any type of unbiased, joint summary of the evidence in the record. He stated that he relied on Ms. Chen's complaint, which is, by definition, one-sided in our adversarial system.

Even though Ms. Chen states that Professor Brink interviewed her, received some depositions, and reviewed the Secretary's answer to the Third Amended Complaint, Professor Brink does not identify any of these evidentiary sources in his report, as he is required to do under Federal Rule of Civil Procedure 25(a)(2)(B)(ii) if he considered or relied upon them. Dkt. 171, at 5, 8; *see also Members*, 140 F.3d at 702. And it is not enough that she claims she will later testify to these allegations at trial. Expert opinion based on unsupported assumptions or speculation is excludable. *Buscaglia*, 25 F.3d at 533; *cf. Farmer v. DirectSat USA, LLC*, No. 08cv03962, 2013 U.S. Dist. LEXIS 39912, *26 (N.D. Ill. Mar. 22, 2013) ("Although shaky expert testimony may be admissible, . . . unreliable expert testimony is the very testimony that a district court, acting in its gatekeeping role, is charged with excluding.") (cleaned up).

Even if the Court were to assume the 2014 complaint constituted "sufficient facts and data" on which an expert could rely, Professor Brink's near-universal reliance on one filing without reference to many other filings on record would "cast[] significant doubt on the soundness" of his opinions. *Smith*, 936 F.3d at 558-59; *see also Sommerfield*, 254 F.R.D. at 326 (allowing expert testimony based solely on a plaintiff's summary of deposition testimony "would be an abdication of the screening function" under *Daubert*). Further, reliance on a one-sided set of facts without considering potentially competing evidence is unreliable as a methodology; failure to address the other facts in evidence "amounts to cherry-picking the facts . . . and such selective use of facts fails to satisfy the scientific method and *Daubert*."

12

*LeClerq v. The Lockformer Co.*, No. 00cv07164, 2005 U.S. Dist. LEXIS 7602, *15 (N.D. Ill. Apr. 28, 2005) (excluding expert testimony because the expert's "disregard of relevant data undermine[d] the reliability of [the] entire opinion") (internal citations omitted). The outdated, previously-dismissed complaint cannot provide a sufficient factual basis for Professor Brink's expert opinion, and his admitted reliance predominantly on that single document cannot provide a reliable methodology. Professor Brink needed to review the evidence itself to obtain an accurate picture of the evidence in this case, and he did not do that. Ms. Chen has simply failed to demonstrate that Professor Brink's testimony comports with the reliability standard required by Federal Rule of Evidence 702 and the United States Supreme Court's decision in *Daubert*.

### C. *Relevance*

The Secretary also argues that Professor Brink's opinion does not meet the standard in Rule 702(d) because it is comprised of "solely legal conclusions" that he reached based on Ms. Chen's "allegations." Dkt. 162, at 2. An expert's opinion is relevant if it "assists the jury in determining any *fact* at issue in the case." *Stuhlmacher*, 774 F.3d at 409 (emphasis added). Experts are not called upon to provide opinions or conclusions as to questions of *law*; the rules of evidence limit their expertise to questions of *fact*. The legal opinions or conclusions of an expert are "unhelpful to a trier of fact." *Van v. Ford Motor Co.*, 332 F.R.D. 249, 270-71 (N.D. Ill. 2019) (emphasis added); *cf.* 4 Weinstein's Federal Evidence (ed. 2020) §

13

704.04(2)(a) ("The most common reason for excluding opinion testimony that gives a legal conclusion is lack of helpfulness."). A thorough review of the report yields numerous impermissible conclusions of law. *See e.g.*, Dkt. 162-1, ¶¶ 10, 13, 14, 15, 39, 40, 46, 55, 56, 68, 69, and 77.

And, in the alternative, the Secretary argues that even if this Court were to find Professor Brink's proposed testimony relevant, it should be excluded under Rule 403. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Secretary argues that if Professor Brink's testimony were to be presented to a jury, his opinions and conclusions of law "will conflate what does or does not constitute a hostile work environment or retaliation," and will confuse and mislead the jury, specifically regarding the inevitable jury instructions. Dkt. 162, at 10. The Court agrees. An expert's testimony is not intended to instruct the jury as to legal issues or draw legal conclusions about the facts in evidence; it is limited to assisting the jury in determining facts at issue, and Ms. Chen has not demonstrated that Professor Brink's testimony is either reliable or relevant to make the opinions admissible.

### III.    Conclusion

For the above reasons, the Secretary's motion to bar the expert testimony of

Professor Kyle Brink [161] is granted.

Date:  September 15, 2021

_____
Honorable Iain D. Johnston
United States District Judge